THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LAWRENCE A. WILLIAMS, Defendant-Appellant.

First District (4th Division)   Nos. 58179, 60208 cons.

Opinion filed June 9, 1976.

Paul Bradley and Margaret Maxwell, both of State Appellate Defender's Office, of Chicago, for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (Robert James Steigmann, Assistant State's Attorney, and Gerald S. Rakes, Law Student, of counsel), for the People.

Mr. JUSTICE ADESKO delivered the opinion of the court:

Following a jury trial, defendant was convicted of armed robbery and sentenced to a term of 5 to 15 years' imprisonment. His direct appeal has been consolidated with his appeal from the dismissal of his petition under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 72), and with his appeal from the ruling denying him relief under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1971, ch. 38, par. 122—1 *et seq.*). On direct appeal defendant contends:

"(1) He was prevented from receiving a fair trial when the trial court denied his motion for a separate trial;

(2) He was not permitted to investigate an additional State witness when the trial court improperly refused him a continuance; and

(3) He was not proven guilty beyond a reasonable doubt."

He asserts that the perjury of his co-defendant entitled him to section 72 relief and that the trial court's refusal to grant him a continuance deprived him of his constitutional right to counsel of his own choice and therefore entitled him to relief under the Post-Conviction Hearing Act.

On March 18, 1971, at approximately 11:45 p.m., two men wearing ski masks robbed Arnold Yarbor and two customers at gunpoint in Mr. Yarbor's restaurant in Champaign, Illinois. Five people were present at the time of the armed robbery—Mr. Yarbor, his wife, two customers, and an employee, Dorothy White. Of these five persons only Dorothy White did not testify at trial. The two customers testified to the fact of the armed robbery and that at least one of the robbers wore a ski mask. Neither customer, however, was able to identify defendant or co-defendant as one of the robbers. Mr. & Mrs. Yarbor related the fact of the armed robbery and that at least one of the robbers wore a ski mask. The Yarbors both recalled that defendant had frequented the restaurant and identified defendant as the robber wearing the ski mask. Mr. Yarbor testifed that he recognized this robber as someone he knew and realized defendant was one of the robbers when his wife told him. Defendant and co-defendant both based their separate defenses on their own denials of involvement and the testimony of alibi witnesses. The jury returned a verdict in favor of the co-defendant, but against the defendant. This direct appeal followed.

On December 10, 1973, approximately two years after trial, defendant discovered through an affidavit from Elmer Ward that the co-defendant, Lester McCall, gave a statement to Mr. Ward to the effect that he committed the armed robbery of the Champaign restaurant with a Sterling Atkins. Defendant then sought section 72 relief based on McCall's perjury at trial and his fraudulent concealment of that perjury from defendant until December 10, 1973. The trial court dismissed defendant's

petition for section 72 relief and defendant appealed, consolidating this appeal with his direct appeal.

Defendant retained private counsel upon his arrest, but could not pay him and agreed to the appointment of the Public Defender. The Public Defender represented defendant from August 23, 1971 and throughout the trial. On December 6, 1971, the case was called for trial and defendant requested to be represented by counsel other than the Public Defender, though he had failed in his efforts to retain private counsel. The trial court thus denied defendant's motion, proceeded with the jury selection, and then continued the case until the following day. Defendant renewed his request on December 7, 1971, and claimed to have retained private counsel. No one other than defendant testified that defendant was financially able to retain private counsel and private counsel never appeared on the record. The trial court then denied defendant's request for a continuance to allow him to retain private counsel. Defendant was denied relief under the Post-Conviction Hearing Act, and this appeal which is now consolidated with defendant's direct appeal and his section 72 appeal, followed.

■■ Defendant contends that the trial court erred in denying his motion to sever his case from that of his co-defendant, Lester McCall. The general rule is that persons jointly indicted for the commission of a crime shall be jointly tried and that the question of a separate trial is largely within the sound judicial discretion of the trial court. (*People v. Wilson* (1963), 29 Ill. 2d 82, 193 N.E.2d 449.) If the defendant, moving for a separate trial, cannot show how he would be prejudiced by a joint trial, he is not in a position to complain of the action of the trial court. (*People v. Lindsay* (1952), 412 Ill. 472, 107 N.E.2d 614.) The test that has long been applied is that where the defense of one defendant is so antagonistic to the other as to deny him a fair trial, the trial court should grant the severance. *People v. Minnecci* (1936), 362 Ill. 541, 200 N.E. 853.

Defendant in the case before us attempts to show prejudice at three different states of the trial. In his opening statement to the jury, counsel for co-defendant McCall claimed that evidence would be introduced to show that defendant committed the robbery. This claim was neither repeated nor reinforced by any witnesses. Police investigation reports showed McCall to have refused to admit the robbery to police and to have insisted that defendant and Charles Lipscomb were the robbers. In the joint trial, defendant could not introduce the fact that McCall refused to make a statement. The record, however, reveals no effort by defendant to introduce this refusal of McCall at trial. Defendant claims to have been prejudiced when the trial court gave the jury an instruction on circumstantial evidence. At trial, however, he merely requested the addition of a paragraph instructing the jury not to find him guilty unless

every reasonable theory of innocence was excluded. Defendant did not object to the giving of the circumstantial evidence instruction and waived such defects on appeal. We are of the opinion that defendant has not shown how he was prejudiced by a joint trial. The defense of co-defendant McCall was not so antagonistic to defendant as to deny him a fair trial.

■■ Defendant argues that he was denied further time to pursue discovery of a recently disclosed State witness when the trial court denied his motion for a continuance. The granting of a continuance to allow preparation of a case rests largely within the sound judicial discretion of the trial judge, and that ruling will not be disturbed without a showing of the trial court's abuse of discretion. (*People v. Latimer* (1966), 35 Ill. 2d 178, 220 N.E.2d 314.) Defendant in the case at bar moved for a continuance prior to trial to be given the opportunity to interview Charles Lipscomb, a witness added to the State's list of witnesses a short time before trial. The trial judge denied defendant's pretrial motion, but ordered that defendant be allowed to interview Lipscomb prior to his being called as a witness. Moreover, the court stated that any further motions on the matter would be heard when the State actually called Lipscomb as a witness. Defendant was thus given the opportunity to interview Lipscomb. Moreover, no further objections were made to the testimony of Charles Lipscomb. We fail to see any abuse of discretion by the trial judge and find the defendant to have had the time necessary to harvest the fruits of his discovery.

■■ Defendant asserts that his identification as one of the robbers was not proven beyond a reasonable doubt. He bases this assertion on his contentions that the trial court erred in admitting the testimony of the complainant which came through leading questions and that the State's failure to call a witness creates an inference that her testimony would be that defendant was not the robber. The discretion of the trial court in allowing leading will not be disturbed unless it appears that this discretion had been abused and has resulted in substantial injury to the defendant. (*People v. Drake* (1974), 20 Ill. App. 3d 762, 314 N.E.2d 532.) The prosecution in the case before us asked two leading questions of the complainant and objections thereto were sustained. The complainant then proceeded to explain the manner in which he identified defendant. Defendant neither objected to the complainant's answer at trial nor did he object in his post-trial motion. We find no such abuse of discretion in the instant case.

■■ Defendant also looks to *People v. DiVito* (1966), 66 Ill. App. 2d 282, 214 N.E.2d 320, in proposing an inference of innocence where necessary witnesses were not called to testify and their absence was not explained by the State. Such an inference consistent with defendant's innocence helped to create a reasonable doubt of defendant's guilt in

*DiVito*. However, where the witness was known and available to the defendant, the State is not required to call all of the witnesses to a crime in proving its case. (*People v. Nowak* (1970), 45 Ill. 2d 158, 258 N.E.2d 313.) We have examined the record and find the State to have had sufficient evidence to convict defendant without the testimony of Dorothy White. Dorothy White was not a necessary witness to the State's case in chief as was the missing witness in *DiVito*. We therefore conclude that the credibility of a witness is for the jury to decide and find no reason to fault the jury's acceptance of the testimony of the State's witnesses. Defendant was proven guilty beyond a reasonable doubt.

Defendant claims that the trial court erred in refusing him relief under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 72). He relies on the perjury and fraudulent concealment of co-defendant McCall, who denied participation in the robbery at trial and later signed an affidavit stating that he and a Sterling Atkins were the two people who committed the armed robbery. While the granting of a new trial on the ground of newly discovered evidence is addressed to the discretion of the trial judge, the standards by which he must judge such a petition are stringent and the burden is upon the applicant to rebut the presumption that the verdict is correct. (*People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 292 N.E.2d 387.) Defendant must show by clear, convincing and satisfactory evidence that perjured testimony was used in a manner proscribed by *Napue v. Illinois* (1959), 360 U.S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173. Once the condemned use of the perjured testimony has been established, the State then has the burden to establish beyond a reasonable doubt that the perjured testimony did not contribute to the conviction. *People v. Bracey* (1972), 51 Ill. 2d 514, 283 N.E.2d 685.

■■ Defendant and co-defendant McCall in the case at bar presented separate defenses to the crime of armed robbery. The State concedes that McCall perjured himself at the joint trial when he denied that he committed the crime. The basis of McCall's defense, however, was the alibi testimony of his witnesses and his denial that he had anything to do with the robbery. We fail to see any responsibility on the part of the State for McCall's testimony at trial. Moreover, we see the alibi defense of McCall and the alibi defense of defendant as separate entities. McCall appears to have perjured himself at trial when he denied his involvement. His denial, however, had nothing to do with the defense of defendant. When McCall later signed an affidavit that he committed the armed robbery with a person other than defendant, he demonstrated himself to be a perjurer and clearly called his credibility into question. We do not see the testimony of codefendant McCall as contributing to the conviction of defendant and find the trial court not to have abused its discretion in dismissing defendant's petition for relief.

Defendant seeks relief under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1971, ch. 38, par. 122—1 *et seq.*) claiming that the trial court's refusal to grant him a continuance deprived him of his sixth amendment right to counsel of his own choice. In *People v. MacArthur* (1971), 2 Ill. App. 3d 1077, 1080, 278 N.E.2d 530, 532, this court stated:

> "The right to counsel guaranteed by the sixth and fourteenth amendments to the federal constitution, by section 9 of article II of the Illinois constitution and by section 113—3 of the code of criminal procedure include the right to be represented by counsel of one's choice. (*People v. Payne,* 46 Ill. 2d 585, 587, 264 N.E.2d 167; *City of Chicago v. Purvey* (Ill. App. 2d), 270 N.E.2d 279.) Important as it is, enjoyment of this right is not absolute. (See *People v. Gray,* 33 Ill. 2d 349, 211 N.E.2d 369; *People v. White,* 84 Ill. App. 2d 178, 228 N.E.2d 169.) A defendant with court-appointed counsel who, on the day a case is set for trial, requests a continuance so he can obtain a lawyer of his choice, must do more than say he is not ready. He must, promptly and with some clarity, give a reason why he wants another lawyer. He must make an ascertainable showing that he, or someone for him, will be able to obtain other counsel. (Compare *People v. Green,* 42 Ill. 2d 555, 248 N.E.2d 116 and *People v. Payne,* supra.)"

■■ The instant case resembles *People v. Williams* (1974), 59 Ill. 2d 402, 320 N.E.2d 849. In neither case did the defendant object to the appointment of the Public Defender. In both cases the defendant originally indicated that he had no funds to hire private counsel, and only voiced dissatisfaction with appointed counsel and the desire to retain private counsel after jury selection had commenced. *Williams* found neither an abuse of discretion in the trial court's refusal to grant a continuance nor a denial of defendant's right to counsel of his own choice. In the case before us defendant was the only person to refer to his desire for private counsel. Private counsel never made an appearance of record. Moreover, no one came forward to show defendant would be able to retain private counsel. We find no abuse of the trial court's discretion in denying defendant a continuance. Neither do we see a denial to defendant's right to counsel of his own choice.

For the foregoing reasons we affirm the judgment of the trial court, the dismissal of defendant's section 72 petition, and the denial of defendant's post-conviction petition.

Affirmed.

JOHNSON, P. J., and BURMAN, J., concur.